UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 07-562 |
| ISAAC WARREN : | |

**SURRICK, J.**                                                                                       **MARCH 19, 2008**

**MEMORANDUM & ORDER**

Presently before the Court is Defendant Isaac Warren's Motion To Suppress Evidence seized on April 4, 2007 (Doc. No. 25).  A Suppression Hearing was held on March 13 and 14, 2008.  For the following reasons, Defendant's Motion will be denied.

**I.      BACKGROUND**

Defendant has been charged in the Indictment with two counts of violating 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon.  (Doc. No. 3.)  Count One arises from an incident that occurred on April 4, 2007, at the intersection of Orthodox and Mulberry Streets in Philadelphia County, Philadelphia.  (Doc. No. 25.)  Count Two charges Defendant with possession of three firearms on April 27, 2007, while inside a residence located at 1037 West Dauphin Street, Philadelphia County, Philadelphia.  (Doc. No. 28.)

**II.     FINDINGS OF FACT**

On April 4, 2007, at about 7:30 PM, Officer Patrick McDonald and his partner, Sergeant Thomas Tamulis, of the Philadelphia Police Department were on routine patrol in the vicinity of the 1800 block of East Orthodox Street in the city.  (Supp. Hr'g Tr. 5-6,13, Mar. 13, 2008.) Sergeant Tamulis was driving the patrol car and Officer McDonald was in the passenger seat. (*Id.* at 13.)  As they approached the intersection of East Orthodox Street and Mulberry Street, the

officers observed a black Acura automobile with heavily tinted windows illegally parked in the crosswalk at the intersection.[1]  (*Id*. at 40.)  This section of the city is a high crime area.  (*Id.* at 13.)  Sergeant Tamulis pulled the patrol car behind the Acura.  (*Id*. at 40.)  The officers then exited their vehicle and approached the Acura, Sergeant Tamulis on the driver's side and Officer McDonald on the passenger's side.  (*Id.*  at 6, 18, 40.)

Officer McDonald asked Defendant, who was seated in the front passenger seat of the Acura, to roll down his window.  (*Id.* at 6.)  McDonald then asked Defendant for identification.  (*Id.*)   Defendant said he did not have any identification on him.  (*Id.*)  In response to Officer McDonald's questions, Defendant stuttered and appeared to be nervous.  (*Id.*)  In addition, Defendant started to make movements towards his right hip area.  (*Id.*)  Because of Defendant's actions, Officer McDonald conducted a pat down while Defendant was still seated in the vehicle.  (*Id.* at 6, 17.)  As a result, he seized a Taurus PT .25 caliber handgun from Defendant's waistband.   (*Id.* at 8, 29.)  The weapon was loaded with one round of ammunition in the chamber and seven rounds in the magazine.  (*Id.*)

Officer McDonald asked Defendant if he had a license to carry the handgun.  (*Id.* at 7.)  Defendant told him he did not.  (*Id.*)  Officer McDonald removed Defendant from the vehicle and placed him in custody.  (*Id.* at 8.)  Before placing Defendant in the patrol car, Officer McDonald conducted a search incident to the arrest.  (*Id.*)  In Defendant's left front pants pocket Officer McDonald found an additional magazine for the firearm which was loaded with seven rounds of ammunition.  (*Id.*)

---

[1] We reject the testimony of the driver of the Acura, Sean Shields, that the vehicle was not illegally parked in the crosswalk. (Supp. Hr'g Tr. 10, Mar. 14, 2008.)

The testimony of Officer McDonald and Sergeant Tamulis was credible. The testimony of the driver of the Acura, Sean Shields, was not.[2]

**III.    DISCUSSION**

Defendant seeks to suppress all physical evidence seized on April 4, 2007 arguing that the traffic stop and search was conducted in violation of his constitutional rights.

"[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States,* 517 U.S. 806, 810 (1996). Here, the vehicle in question was illegally stopped in a crosswalk, in a high crime area of the city, and it had illegally tinted windows. Clearly, Officer McDonald and Sergeant Tamulis were entitled to approach the vehicle and ask the occupants of the car for identification.[3] It is not unconstitutional or improper for a police officer to ask the name of a passenger in a car. "In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 185 (2004); *see also United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007) ("[B]ecause passengers present a risk to officer safety equal to the risk presented by the driver an officer may ask for identification from passengers and run background checks on them as well.") (internal citations omitted); *Commonwealth v. Campbell*, 862 A.2d 659, 665 (Pa. Super. 2004) ("[T]here

---

[2] Based upon the content of his testimony, his demeanor on the witness stand, his prior criminal conviction, his lifelong friendship with Defendant, and his involvement in the underlying crime which gave rise to Count Two of this Indictment, we find Shield's testimony neither credible nor persuasive.

[3] While Officer McDonald was talking to Defendant, Sergeant Tamulis asked Shields for his license, registration, and insurance. (Supp. Hr'g Tr. 40, Mar. 13, 2008.) Shields provided this information. (*Id.* at 42-43.) Shields was ultimately issued a Citation for driving with unlawfully tinted windows and released. Shields is presently paying the Citation. (*Id.* at 41-42.)

is no legitimate expectation of privacy associated with one's identity.").

"The Supreme Court has repeatedly recognized that traffic stops are dangerous encounters that result in assaults and murders of police officers." *United States v. Moorefield,* 111 F.3d 10, 13 (3d Cir. 1997) (referencing *Maryland v. Wilson*, 519 U.S. 408, 413 (1997); *Michigan v. Long*, 463 U.S. 1032, 1047 (1983); *United States v. Robinson*, 414 U.S. 218, 234 n.5 (1973); *Adams v. Williams*, 407 U.S. 143, 148 n.3 (1972)). Moreover, the risk of danger to a police officer conducting a traffic stop increases where the car contains passengers in addition to the driver. *Moorefield,* 111 F.3d at 13 (citing *Wilson*, 519 U.S. at 414).

"After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry." *United States v. Givan*, 320 F.3d 452, 458 (3d. Cir. 2003). The Supreme Court recognized, in *Terry v. Ohio*, 392 U.S. 1 (1968), that a pat down search can be justified if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27. "In order to minimize the dangers faced by police officers conducting traffic stops, the Court has extended the constitutional principles in *Terry* to situations involving officers and motorists." *Moorefield*, 111 F.3d at 13. "[P]olice can conduct a limited weapons 'pat-down' of a passenger of a lawfully stopped car so long as the constitutional requirements of *Terry* are met." *United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000).

In this case, Defendant was stuttering and acting nervous and, although he stated that he did not have any identification on him, kept reaching for his right hip. Defendant now argues that he was touching his right hip in a search for his identification. However, Defendant's actions and statements were clearly suspicious. Officer McDonald's suspicions were also

4

informed by the fact that Defendant and Shields were sitting in an illegally stopped car, with illegally tinted windows, in a high crime area of the city.

The fact that Defendant now attempts to explain his actions in touching his right hip as a search for his identification is of no consequence. Nor is it relevant, as Defendant argues, that the police officers may have had an ulterior motive in approaching the vehicle and searching Defendant. *See Whren*, 517 U.S. at 813 (foreclosing the argument that the "constitutional reasonableness of traffic stops depends on the actual motivations" of the police officers involved). Rather, what is relevant under *Terry* is whether Officer McDonald was reasonable in his belief that his safety or the safety of others might be compromised. "[A] police officer may conduct a reasonable search for weapons for his or her own protection without violating the Fourth Amendment." *Kithcart*, 218 F.3d at 219 (referencing *Terry*, 392 U.S. at 27). Based upon Defendant's responses to Officer McDonald, Officer McDonald's observations of Defendant, and the circumstances under which Officer McDonald approached Defendant in the first instance, we are satisfied that Officer McDonald's belief that the Defendant may have been a danger to him or to others was perfectly reasonable. Accordingly, the stop of the vehicle and the search of Defendant were reasonable as well.

### III. CONCLUSION

For these reasons, we are compelled to conclude that the Defendant has presented no basis for the suppression of the evidence seized. Defendant's Motion to Suppress will be denied.

An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 07-562 |
| ISAAC WARREN | : | |

**ORDER**

AND NOW, this  19th  day of March, 2008, upon consideration of Defendant Isaac Warren's Motion To Suppress Evidence seized on April 4, 2007 (Doc. No. 25), and after a hearing in open court, it is ORDERED that the Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge